UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TYRONE HOUSTON a/k/a Tyrone Black,      :
                Plaintiff,      :
                                         :
v.      :    **OPINION AND ORDER**
                                         :
                                         :    20 CV 2135 (VB)
MICHAEL CAPRA, individually and as      :
Superintendent of Sing Sing C.F., et al.      :
                Defendants.      :
------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Tyrone Houston, proceeding pro se and in forma pauperis, brings this Section

1983 action against defendants Michael Capra; S. Henton ("Deputy Superintendent Henton"); C.

Vasquez ("Nurse Administrator Vasquez"); Anthony J. Annucci; Anne Marie McGrath; John

Morley; Stephen Maher; Jeff McKoy; Shelley Mallozzi; James O'Gorman; Ruth Brown ("Nurse

Brown"); Leon A. Pralatowski ("Pharmacy Supervisor Pralatowski"); Katie Ngbodi ("P.A.

Ngbodi"); Akinola Akinyombo ("Deputy Superintendent Akinyombo"); M. Becker ("Nurse

Administrator Becker"); Leroy Fields ("Superintendent Fields"); Stephen Urbanski ("Deputy

Superintendent Urbanski"); Emily Williams ("Deputy Superintendent Williams"); Edward

Burnett ("Superintendent Burnett"); S. Frost ("Deputy Superintendent Frost"); Samone L.

Dinkins ("Officer Dinkins"); Lahteasha A. Campbell ("Sgt. Campbell"); Sally A. Reams; C.

Dyson ("Sgt. Dyson"); Bailey ("C.O. Bailey"); Ortiz ("C.O. Ortiz"); Valez ("Sgt. Valez");

Lieutenant Perkins ("Lt. Perkins"); C.O. Robert D. Cimminelli ("C.O. Cimminelli"); Q. Quick;

Lilana Kinney ("C.O. Kinney"); A. Washer; Eric A. Flores ("C.O. Flores"); B. Mazzone ("C.O.

Mazzone"); Davis ("Nurse Davis"); Mitchell G. Lake; Sandra Amoia; K. Williams ("C.O.

Williams"); Margaret Cieprisz ("AAG Cieprisz"); and one John Doe defendant.  Plaintiff alleges

his constitutional rights were violated during his incarceration at Fishkill Correctional Facility in

Beacon, New York ("Fishkill"), and Sing Sing Correctional Facility in Ossining, New York ("Sing Sing").

Now pending are (i) defendants' motion to dismiss the second amended complaint (Doc. #104); and (ii) plaintiff's motion for a preliminary injunction.  (Doc. #123).

For the reasons set forth below, defendants' motion is GRANTED IN PART and DENIED IN PART, and plaintiff's motion is DENIED.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The Court summarizes the relevant factual background, drawn from plaintiff's second amended complaint, memoranda of law, and declarations with exhibits, below.[1]

I.     <u>Medical Treatment</u>

Plaintiff alleges he suffers from several medical conditions and was denied adequate medical care at Fishkill and Sing Sing.  Plaintiff asserts he requested assistance from various prison staff members and filed a number of grievances regarding his medical treatment, but no action was taken and multiple officials failed to intervene on his behalf.

A.     <u>Glaucoma</u>

Plaintiff alleges he suffers from glaucoma, for which he was prescribed eyedrops.

Plaintiff alleges that, when incarcerated at Sing Sing in 2018 and 2019, Nurse Administrator Vasquez and Deputy Superintendent Henton destroyed his sick-call requests

---

[1]     In addition to the complaint, courts may consider a <u>pro se</u> plaintiff's other submissions, such as any opposition to a motion to dismiss, when "evaluating the legal sufficiency of a <u>pro se</u> plaintiff's claims."  <u>See</u> <u>Vlad-Berindan v. MTA N.Y.C. Transit</u>, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cases).

Plaintiff will be provided copies of all unpublished opinions cited in this decision.  <u>See</u> <u>Lebron v. Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

regarding his glaucoma and stopped providing plaintiff his eyedrops.  As a result, he suffered from severe headaches, blurred vision, and loss of vision in his left eye.

Plaintiff alleges that, at one point when incarcerated at Fishkill, P.A. Ngbodi, Nurse Administrator Becker, Pharmacy Supervisor Pralatowski, Deputy Superintendent Urbanski, Deputy Superintendent Akinyombo, and Superintendent Fields did not refill his eyedrops for 120 days.

Further, according to plaintiff, in October and November 2020, medical staff prescribed him additional eyedrops for his glaucoma and informed plaintiff he would go blind if not seen by an outside specialist.  However, P.A. Ngbodi and Pharmacy Supervisor Pralatowski did not provide his prescribed eyedrops until January 2021.

Plaintiff alleges he saw an outside eye specialist on October 28, 2021,[2] who informed plaintiff he was suffering irreversible damage to his left eye because he was not receiving his medication.  (Doc. #124 ("Pl. Mem.") at ECF 5).[3]

B.    <u>High Blood Pressure and High Cholesterol</u>

Plaintiff alleges he suffers from high blood pressure and high cholesterol, for which he was prescribed low-sodium meals and medication.

Plaintiff alleges Nurse Administrator Vasquez and Deputy Superintendent Henton cancelled his low-sodium meals in February 2019.

---

[2]    Plaintiff also alleges his other requests to see an outside eye specialist were denied.

[3]    "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

Next, plaintiff alleges Nurse Brown stopped his high blood pressure medication and cancelled his low-sodium meals in January 2020.  Plaintiff also alleges Nurse Brown switched him to a different medication for his high cholesterol, and he suffered side effects as a result.

Finally, plaintiff alleges P.A. Ngbodi did not approve his low-sodium diet in January 2020.

C.    Left Testicle Injury

Plaintiff alleges he suffered from a serious injury to his left testicle sometime in 2019 when incarcerated at Fishkill, for which he was prescribed antibiotics.

According to plaintiff, Nurse Brown, P.A. Ngbodi, and Pharmacy Supervisor Pralatowski cancelled his antibiotics in January 2020, claiming they were no longer necessary, even though plaintiff was still in pain.

Plaintiff also alleges medical providers recommended he see a urologist to treat this injury, a request that was under review at the time of the filing of the second amended complaint.

D.    Gout and Arthritis

Plaintiff alleges he suffers from gout and arthritis, for which he is prescribed medication. Plaintiff alleges Nurse Brown prescribed him Naproxen for these conditions.  According to plaintiff, Nurse Brown knew plaintiff has heart disease, and she prescribed Naproxen to cause plaintiff to have a heart attack or stroke.

E.    Johnson & Johnson COVID-19 Vaccine

Plaintiff received the Johnson & Johnson ("J&J") COVID-19 vaccine on May 5, 2021, which he alleges caused him to develop, among other things, tumors on his lungs.  (Pl. Mem. at ECF 8).

4

F.      Other Diseases

Plaintiff also alleges he suffers from heart disease, obesity, kidney disease, asthma, and diabetes, and defendants are denying him access to treatment for these conditions.  (Pl. Mem. at ECF 15–16).

II.     Legal Proceedings

Plaintiff alleges certain defendants interfered with his pending lawsuits when incarcerated at Fishkill.

First, plaintiff alleges that, sometime in 2020, C.O. Cimminelli opened, read, and destroyed plaintiff's incoming mail without authorization.

Second, plaintiff alleges Deputy Superintendent Williams, Deputy Superintendent Akinyombo, and AAG Cieprisz sabotaged his petition for a writ of habeas corpus in Supreme Court, Dutchess County.  Namely, plaintiff alleges AAG Cieprisz submitted an affirmation in support of a motion to dismiss plaintiff's petition, and her affirmation annexed medical records that were deliberately falsified by Deputy Superintendent Williams and Deputy Superintendent Akinyombo.  (See Doc. #125 at ECF 15–23).  According to plaintiff, these medical records falsely stated that plaintiff attempted suicide on August 10, 2014; that plaintiff tested negative for COVID-19 on July 11, 2020; and that plaintiff does not suffer from heart disease.

Third, plaintiff alleges Officer Dinkins denied him access to the Fishkill law library on multiple occasions.  Specifically, plaintiff alleges Officer Dinkins removed plaintiff from the law library on January 2, 2020, and that, between January 6 to 14, 2020, Officer Dinkins made plaintiff wait ten to fifteen minutes or thirty to sixty minutes[4] for law library supplies and, at one

---

[4]      Plaintiff's complaint is unclear.  (See Doc. #79 ("SAC") ¶¶ 70 (plaintiff waited "10–15 minutes for law library supplies on 1/6/20 thru 1/9/20"), 71 (plaintiff waited "30–60 minutes for law library supplies on 1/6/20 thru 1/10/20")).

point, closed the library early.  According to plaintiff, Officer Dinkins's conduct caused him to miss a January 9, 2020, court deadline in a direct appeal of his criminal conviction.

Fourth, plaintiff alleges C.O. Williams denied plaintiff's request for a sick call, so he could not renew his medications or permit for a cane, and he was forced to attend court appearances from November 27, 2020, to January 5, 2021, without his medication or a cane.

Again, plaintiff alleges he filed several grievances about these incidents, which were denied.

III.   The COVID Pandemic

Plaintiff makes a number of allegations about defendants' handling of the COVID-19 pandemic.  He contends defendants' conduct exposed plaintiff to COVID-19 and caused multiple Fishkill inmates and staff members to die from COVID-19.

Plaintiff alleges defendants failed to implement an adequate cleaning protocol at Fishkill, that inmates were not permitted to socially distance or isolate when experiencing COVID-19 symptoms, and that staff members were permitted to enter Fishkill when experiencing symptoms of COVID-19.  Further, plaintiff alleges defendants prevented grievances related to Fishkill's COVID-19 protocols from being fully exhausted, presumably to avoid judicial scrutiny. Moreover, plaintiff alleges defendants administered the J&J vaccine to inmates notwithstanding the potential side effects.  Finally, plaintiff contends defendants tried to cover up the number of people who died from COVID-19 at Fishkill.

Plaintiff particularly challenges Fishkill's policy for inmates who were exposed to or tested positive for COVID-19, which he alleges was enacted by Nurse Administrator Becker, Deputy Superintendent Akinyombo, Deputy Superintendent Frost, and Superintendent Burnett. (SAC ¶¶ 58, 61).

According to plaintiff, Fishkill converted a section of its Special Housing Unit called the "S200" to quarantine inmates with COVID-19 and exposed to COVID-19.  Plaintiff alleges these inmates were forced to "double bunk" together in the S200.  This policy (the "S200 policy"), plaintiff contends, was contrary to CDC recommendations of social distancing and isolation for people exposed to COVID-19.  Moreover, plaintiff alleges he observed raw sewage and human waste on the floors and walls and in the shower in the S200.

Plaintiff alleges he was moved to the S200 after he was told by Nurse Davis on January 6, 2021, that he had been in close contact with a person who later tested positive for COVID-19.  Plaintiff asserts he was then double bunked with another inmate who had been in close contact with a person with COVID-19.

According to plaintiff, he tested positive for COVID-19 three days later, and C.O. Mazzone tried to move him to double bunk with a visibly ill inmate in another part of the S200.  Plaintiff refused, and officer John Doe explained that plaintiff would be placed in keeplock[5] if he continued to refuse.  Plaintiff still refused, and he was subject to a Tier II misbehavior report.

In addition to these general policies, plaintiff contends two corrections officers refused to wear masks at Fishkill.  First, plaintiff alleges C.O. Cimminelli did not wear a mask at work when he returned to Fishkill after contracting COVID-19 to deliberately infect inmates.  Second, plaintiff alleges he asked C.O. Kinney to cover her mouth when coughing or sneezing, and instead she deliberately coughed into his unmasked face.  According to plaintiff, he subsequently suffered from a severe illness which he believes was COVID-19.  Plaintiff alleges other officers failed to intervene to protect him and covered up these officers' conduct.

---

[5]     "Keeplock" is a form of discipline that subjects an inmate to restrictions on, among other things, visits, recreation, and telephone calls.  See 7 N.Y.C.R.R. § 301.6.

Plaintiff also alleges defendants attempted to deliberately infect him with COVID-19 on two occasions.  First, plaintiff alleges that after a trial in the U.S. District Court for the Western District of New York in November and December 2020, plaintiff was sent to Groveland Correctional Facility, which was known to be a COVID-19 hotspot, rather than Fishkill, and he was exposed to over 150 inmates with COVID-19.  Second, plaintiff alleges he was moved from one part of Fishkill to another so he would be infected with COVID-19.

IV.   <u>Keeplock</u>

Plaintiff alleges he was unfairly placed in keeplock on one occasion at Sing Sing.

According to plaintiff, he was placed in keeplock by C.O. Bailey and C.O. Ortiz on February 4, 2019, for fifteen days as discipline for using drugs "despite never submitting any urine sample or refusing to provide a urine sample."  (SAC ¶ 76).  Plaintiff alleges he was not provided notice or a hearing before being placed in keeplock.

Plaintiff alleges he filed a grievance and a series of appeals regarding his keeplock confinement, which were denied.

V.   <u>Draft Bags</u>

Plaintiff alleges he was forced to carry "draft bags"[6] at Fishkill as punishment on two occasions.

First, plaintiff alleges that, on December 23, 2019, Lt. Perkins ordered plaintiff to carry his four draft bags, which weighed fifty pounds each, up a quarter-mile hill to a different part of the facility and caused plaintiff pain in his feet, ankles, and chest.

---

[6]    The Court understands "draft bags" to mean bags of legal papers that incarcerated people are entitled to keep in their prison cells.

8

Second, plaintiff alleges that, on January 6, 2021, Sgt. Campbell, C.O. Flores, and Sgt. Dyson ordered plaintiff to carry each of his four draft bags, weighing fifty pounds each, up a half-mile hill to a different part of Fishkill.

VI.    Verbal Harassment

Plaintiff alleges two incidents of verbal harassment by Fishkill staff.

First, plaintiff alleges that, in January 2020, Officer Dinkins called plaintiff a "rapist" and a "child molester" in the law library.  (SAC ¶ 70).

Second, plaintiff alleges that, on October 23, 2020, C.O. Kinney called him a racial slur. (SAC ¶ 47).

VII.   Threats of Violence by Prison Officials

Plaintiff also alleges he was targeted by two corrections officers at Fishkill.

First, plaintiff alleges that, at one point, C.O. Cimminelli moved plaintiff to "the rapist side" of Fishkill "to cause physical altercations" between plaintiff and other inmates.  (SAC ¶ 84).

Second, plaintiff alleges that, in September 2021, he heard rumors C.O. Cimminelli and C.O. Kinney were trying to pay inmates to attack plaintiff.  (Doc. #118 ("Pl. Opp.") at ECF 22). As a result, plaintiff requested protective custody, which was denied.  Plaintiff filed several complaints about the denial of protective custody, but no action was taken.  He also filed grievances, which were denied.

**DISCUSSION**

I.   <u>Standards of Review</u>

   A.   <u>Motion to Dismiss</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under "the two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v.

Iqbal</u>, 556 U.S. 662, 679 (2009).[7]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678;

<u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  <u>Id</u>. (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).

The Court must liberally construe submissions of <u>pro se</u> litigants and interpret them "to

raise the strongest arguments that they suggest."  <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d

471, 474 (2d Cir. 2006) (per curiam) (collecting cases).  Applying the pleading rules

---

[7]      Unless otherwise indicated, case quotations omit all internal citations, quotation marks,
footnotes, and alterations.

permissively is particularly appropriate when, as here, a <u>pro se</u> plaintiff alleges civil rights

violations.  <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a

<u>pro se</u> case, however, . . . threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  <u>Chavis v. Chappius</u>, 618 F.3d 162, 170 (2d Cir.

2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded.  <u>Id</u>.

    B.    <u>Preliminary Injunction</u>

    "A preliminary injunction is an extraordinary and drastic remedy . . . that should not be

granted unless the movant, by a clear showing, carries the burden of persuasion."  <u>Sussman v.

Crawford</u>, 488 F.3d 136, 139 (2d Cir. 2007).

    A party seeking a preliminary injunction must demonstrate (i) "irreparable harm";

(ii) "either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to

the merits of its claim to make them fair ground for litigation, plus a balance of hardships tipping

decidedly in favor of the moving party"; and (iii) "that a preliminary injunction is in the public

interest."  <u>New York ex rel. Schneiderman v. Actavis PLC</u>, 787 F.3d 638, 650 (2d Cir. 2015).

II.    <u>Eighth Amendment Claims</u>

    Liberally construed, plaintiff purports to allege four types of Eighth Amendment claims:

(i) deliberate indifference to his serious medical needs; (ii) unconstitutional conditions of

confinement; (iii) excessive force by prison officials; and (iv) failure to protect him from prison

officials and other inmates.

    A.    <u>Legal Standard</u>

    The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S.

Const. amend. VIII.  Courts have construed the Eighth Amendment to protect prison inmates'

rights to (i) adequate medical care, <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); (ii) "conditions

of confinement" that are "at least humane," Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001); (iii) be free from the use of excessive physical force by prison officials, Whitley v. Albers, 475 U.S. 312, 320–21 (1986); and (iv) be protected from violence by other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994).

To state a claim for violation of any of these Eighth Amendment rights, a prisoner must plausibly allege an objective component—that the deprivation of rights was objectively serious—and a subjective component—that the prison official acted with requisite mens rea. See, e.g., Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006) (deliberate indifference to serious medical needs); Gaston v. Coughlin, 249 F.3d at 164 (conditions of confinement); Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) (excessive force); Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (failure to protect).

Moreover, to adequately state any Section 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Tangreti v. Bachmann, 983 F.3d 609, 616 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. at 676). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. See Ashcroft v. Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").

B.    Deliberate Indifference to Serious Medical Needs

Liberally construed, plaintiff claims deliberate indifference to his serious medical needs arising from his treatment for glaucoma, high blood pressure and high cholesterol, gout and arthritis, heart disease, obesity, kidney disease, and diabetes, as well as from his receipt of the J&J vaccine.

1.    Glaucoma

Plaintiff plausibly alleges deliberate indifference claims against P.A. Ngbodi, Pharmacy Supervisor Pralatowski, Nurse Administrator Vasquez, and Deputy Superintendent Henton with respect to his glaucoma treatment.

To plead the objective component of a medical-needs claim, a plaintiff must plausibly allege a "sufficiently serious" inadequacy in his medical care. Salahuddin v. Goord, 467 F.3d at 279–80. That is, a plaintiff must adequately plead he "was actually deprived of adequate medical care" and that such deprivation was "sufficiently serious," which turns on "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id.

To plead the subjective component of a medical-needs claim, a plaintiff must allege "deliberate indifference," which is the equivalent of "subjective recklessness." Salahuddin v. Goord, 467 F.3d at 280. "Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking." Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011). That is, disagreement between a plaintiff and his medical providers does not form the basis for a medical-needs claim. See, e.g., Whitfield v. O'Connell, 402 F. App'x 563, 565–66 (2d Cir. 2010) (summary order).

Here, plaintiff has adequately alleged the denial of his treatment for glaucoma—his prescribed eye drops—was objectively serious. According to plaintiff, he suffered irreversible damage to his left eye and may go blind because he was not provided his eye drops. See, e.g., Liner v. Fischer, 2013 WL 4405539, at *2 (S.D.N.Y. Aug. 7, 2013) (plaintiff stated a medical-needs claim arising from alleged deprivation of his glaucoma medication).

Plaintiff has also adequately alleged P.A. Ngbodi, Pharmacy Supervisor Pralatowski, Nurse Administrator Vasquez, and Deputy Superintendent Henton were personally involved in the denial of his treatment and acted with the requisite mens rea.  Namely, he alleges these officials withheld his medication, refused to refill it, and destroyed relevant sick-call requests, even though they knew plaintiff suffered from glaucoma and could go blind without treatment. These allegations are sufficient to establish personal involvement and mens rea at this stage of the case.

        2.     Other Conditions

Plaintiff does not plausibly allege medical-needs claims with respect to his other medical conditions.

First, plaintiff does not adequately allege a constitutional claim arising from his treatment for high blood pressure and high cholesterol.  Plaintiff says he was prescribed low-sodium meals and medication for these conditions, but he stopped receiving low-sodium meals and medication and his requests for continuing low-sodium meals were denied.  He does not, however, allege this deprivation was "sufficiently serious."  Salahuddin v. Goord, 467 F.3d at 280.  That is, he does not explain what harm the lack of low-sodium meals or his medication "caused or will likely cause."  Id.

Second, plaintiff does not adequately allege defendants acted with the requisite mens rea with respect to plaintiff's testicle injury, gout and arthritis, or receipt of the J&J vaccine.  For his testicle injury, plaintiff alleges prison medical providers determined he no longer needed antibiotics and were reviewing his request to see a urologist.  For his gout and arthritis, plaintiff alleges Nurse Brown prescribed him Naproxen, which put him at risk for a heart attack or stroke. And with respect to the J&J vaccine, plaintiff alleges he suffered serious side effects after

receiving the shot.  However, plaintiff does not allege any facts to suggest any defendants acted with culpable recklessness, rather, it appears he takes issue with defendants' medical judgment in each situation, which cannot form the basis of a constitutional claim.  Hill v. Curcione, 657 F.3d at 123 (affirming dismissal of medical-needs claim based on denial of "stronger pain medication and a nerve conduction study" by prison medical providers absent allegations they "acted with a culpable state of mind").

Finally, plaintiff makes the conclusory allegation he was denied proper treatment for heart disease, obesity, kidney disease, asthma, diabetes, and lung tumors.  (Pl. Mem. at ECF 15–16).  Absent any allegations regarding the seriousness of these conditions, or what treatment he was deprived of and how that deprivation affected him, these claims must be dismissed.  See, e.g., Sauls v. N.Y.C. Dep't of Corr., 151 F. App'x 38, 39 (2d Cir. 2005) (summary order) (plaintiff's allegations he was not given medication for unspecified conditions insufficient to state medical-needs claim).

In short, plaintiff's medical-needs claims against P.A. Ngbodi, Pharmacy Supervisor Pralatowski, Nurse Administrator Vasquez, and Deputy Superintendent Henton arising from his glaucoma treatment may proceed, and all other medical-needs claims must be dismissed.

C.    Conditions of Confinement

Liberally construed, plaintiff purports to allege defendants' response to the COVID-19 pandemic resulted in unconstitutional conditions of confinement at Fishkill.

To establish the objective component of a conditions-of-confinement claim, a plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."  Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013).  "Thus,

15

prison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." Id.

To establish the subjective component, a plaintiff must allege a "defendant acted with more than mere negligence." Walker v. Schult, 717 F.3d at 125 (quoting Farmer v. Brennan, 511 U.S. at 835). "To constitute deliberate indifference, the prison official must know of, and disregard, an excessive risk to inmate health or safety." Id. "Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." Id.

### 1.    The S200 Policy

Plaintiff plausibly alleges conditions-of-confinement claims arising from Fishkill's S200 policy against Nurse Administrator Becker, Deputy Superintendent Frost, Deputy Superintendent Akinyombo, and Superintendent Burnett.

First, plaintiff plausibly alleges the S200 policy posed an unreasonable risk of serious damage to his health. "It is undisputed—and, indeed, by now common knowledge—that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death." Gil-Cabrera v. Dep't of Corr., 2021 WL 5282620, at *4 (S.D.N.Y. Sept. 27, 2021), report and recommendation adopted, 2021 WL 5910055 (Dec. 14, 2021). According to plaintiff, defendants required inmates exposed to COVID-19, but not necessarily ill, to double bunk with inmates with confirmed cases of COVID-19, even though federal guidance emphasized the importance of social distancing and isolation in preventing the spread of the virus. Plaintiff plausibly asserts that requiring him to share a cell with an inmate potentially infected with COVID-19 put him at risk of infection and, thus, severe illness.

Second, plaintiff plausibly alleges defendants were deliberately indifferent to the risks of their policy.  The Eighth Amendment imposes an "affirmative obligation" upon "correctional officials . . . to protect inmates from infectious disease."  Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996).  Plaintiff plausibly asserts the risks of the S200 policy were clear to defendants in light of the spread of COVID throughout Fishkill.  (See Doc. #118-1 at ECF 21 (memorializing the deaths of ten Fishkill inmates in spring 2020)).

Lastly, plaintiff plausibly alleges the personal involvement of Nurse Administrator Becker, Deputy Superintendent Frost, Deputy Superintendent Akinyombo, and Superintendent Burnett.  Plaintiff alleges these defendants personally developed and enacted the S200 policy, rather than simply supervised the officers that enforced the policy.  See Stone #1 v. Annucci, 2021 WL 4463033, at *11 (S.D.N.Y. Sept. 28, 2021) (plaintiffs stated a Section 1983 claim against senior DOCCS officials allegedly responsible for policies and practices that allegedly caused the sexual assault of incarcerated women).

> 2.   Other COVID-19 Responses

Plaintiff does not plausibly allege conditions-of-confinement claims arising from any other aspect of Fishkill's response to COVID-19.

Plaintiff makes several conclusory allegations in this regard, including that he and other Fishkill inmates were not permitted to isolate or social distance, defendants did not implement appropriate cleaning protocols, Fishkill staff were permitted in the facility without masks and without being tested for COVID-19, and certain officials prevented pandemic-related grievances from being adjudicated.  Absent additional factual detail, these allegations fail to state a claim upon which relief can be granted.  Ashcroft v. Iqbal, 556 U.S. at 678.

Plaintiff also contends Fishkill staff "malicious[ly] and sadistic[ally]" administered the J&J vaccine to inmates despite potential side effects.  (Pl. Opp. at ECF 19).  Even assuming the J&J vaccine does cause serious side effects, plaintiff does not allege any facts to suggest defendants provided the J&J vaccine to Fishkill inmates for any reason other than to protect them from contracting and potentially dying from the spread of COVID-19.  In other words, plaintiff does not adequately allege the <u>mens</u> <u>rea</u> component of a conditions-of-confinement claim.

Accordingly, plaintiff's conditions-of-confinement claims against Nurse Administrator Becker, Deputy Superintendent Frost, Deputy Superintendent Akinyombo, and Superintendent Burnett arising from the S200 policy may proceed, and all other conditions-of-confinement claims must be dismissed.[8]

D.  <u>Excessive Force</u>

Liberally construed, plaintiff asserts excessive-force claims arising from three alleged incidents:  (i) on two occasions, he was forced to carry four fifty-pound draft bags across Fishkill; and (ii) C.O. Kinney deliberately coughed into his unmasked face.

To establish the objective component of an excessive-force claim, a plaintiff must allege the use of force was excessive "in light of 'contemporary standards of decency.'"  <u>Wright v. Goord</u>, 554 F.3d at 268 (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)).  For example, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary

---

[8]      In opposition to the motion to dismiss, plaintiff alleges defendants' COVID-19 protocols constituted a conspiracy to violate his civil rights.  (See Pl. Opp. at ECF 9–10).  Plaintiff's "conclusory, vague, [and] general allegations that the defendants have engaged in a conspiracy to deprive [him] of his constitutional rights" are insufficient to state a conspiracy claim. <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 325 (2d Cir. 2002).  Accordingly, to the extent plaintiff asserts conspiracy claims, they must be dismissed.

standards of decency always are violated," regardless of "whether or not significant injury is evident." Hudson v. McMillian, 503 U.S. at 9.

To establish the subjective component, a plaintiff must show defendants acted with "wantonness in light of the particular circumstances surrounding the challenged conduct." Wright v. Goord, 554 F.3d at 268. Whether an action was "wanton" turns on whether it was taken "in a good-faith effort to maintain or restore discipline, to serve a legitimate penological objective, and not to maliciously and sadistically . . . cause harm." Matthews v. N.Y.S. Dep't of Corr. & Cmty. Supervision, 2020 WL 1030647, at *6 (N.D.N.Y. Mar. 3, 2020).

### 1.   Draft Bags

Plaintiff has adequately alleged excessive-force claims arising from being forced to carry draft bags by Lt. Perkins, Sgt. Campbell, C.O. Flores, and Sgt. Dyson.

Plaintiff alleges that, on both occasions, he was asked to carry two hundred pounds of legal papers over long distances, even though he needs a cane to walk. Drawing all inferences in favor of plaintiff, plaintiff has plausibly alleged he was made to carry draft bags, not to maintain discipline or to serve a legitimate penological objective, but to harm him. Thus, although plaintiff does not allege significant injuries, he has plausibly alleged defendants' conduct violated contemporary standards of decency. See, e.g., Matthews v. N.Y.S. Dep't of Corr. & Cmty. Supervision, 2020 WL 1030647, at *7 (inmates stated excessive-force claims when they alleged correction officers made them balance on their knees on hard surfaces for ten to fifteen minutes for no apparent reason).

### 2.   C.O. Kinney

Plaintiff has also adequately alleged an excessive-force claim arising from C.O. Kinney allegedly coughing in his face.

First, plaintiff plausibly alleges that intentionally coughing in someone's face during the COVID-19 pandemic violates contemporary standards of decency, considering that COVID-19 is a dangerous airborne virus.  Second, plaintiff plausibly alleges C.O. Kinney acted to harm him; no need for discipline or legitimate penological objective can be discerned from the pleadings.

Accordingly, plaintiff's excessive-force claims against Lt. Perkins, Sgt. Campbell, C.O. Flores, C.O. Kinney, and Sgt. Dyson may proceed.

E.    Failure to Protect

Liberally construed, plaintiff purports to allege failure-to-protect claims arising from two incidents:  (i) C.O. Cimminelli moved plaintiff to the "rapist side" of Fishkill "to cause physical altercations" between plaintiff and other inmates; and (ii) plaintiff heard rumors that C.O. Cimminelli and C.O. Kinney were trying to pay inmates to attack him.

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. at 833.

To plead the objective component of a failure-to-protect claim, a plaintiff must plausibly allege a prison official's conduct was sufficiently serious, meaning that the conduct "pose[d] an unreasonable risk of serious damage to his health."  Darnell v. Pineiro, 849 F.3d 17, 30 (2d Cir. 2017).  For example, a prisoner states a failure-to-protect claim when he alleges prison officials knowingly placed him in a section of a prison where he would be subject to a heightened risk of harm in light of his identity and the identities of the inmates in that section.  Manning v. Griffin, 2016 WL 1274588, at *7 (S.D.N.Y. Mar. 31, 2016) (collecting cases).

Here, plaintiff does not plausibly allege any failure-to-protect claim.

First, plaintiff does not adequately allege his move to the "rapist side" of Fishkill was sufficiently serious.  Namely, plaintiff does not allege any facts suggesting the inmates on the "rapist side" of Fishkill posed a particular or heightened risk to plaintiff.

Second, plaintiff does not plausibly allege C.O. Cimminelli or C.O. Kinney presented an unreasonable risk to his safety.  According to plaintiff, he heard "rumors" that C.O. Cimminelli and C.O. Kinney had taken a hit out on him.  (Pl. Opp. at ECF 22).  Rumors are insufficient to establish an objectively serious risk to a plaintiff.  Cf. Robinson v. Spanno, 2021 WL 1109053, at *5 (S.D.N.Y. Mar. 23, 2021) (collecting cases that "vague concerns about safety from future assault" do not state a failure-to-protect claim).

Accordingly, plaintiff's failure-to-protect claims must be dismissed.[9]

III.   Due Process Claims

Defendants contend plaintiff does not adequately allege being placed in keeplock was a violation of his due process rights.

The Court agrees.

To establish a violation of due process, a plaintiff must show:  (i) "he possessed a liberty interest"; and (ii) defendants "deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).  A prisoner's liberty interest is "implicated" by prison discipline "if it imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  J.S. v. T'Kach, 714 F.3d 99, 106 (2d Cir. 2013).

---

[9]    According to plaintiff, he filed several grievances and appeals related to his Eighth Amendment claims, which were acknowledged and denied by senior prison officials.  These allegations are insufficient to establish personal involvement.  See Williams v. Smith, 781 F.2d 319, 324 (2d Cir. 1986).  Thus, to the extent plaintiff asserts Eighth Amendment claims against these officials on the basis of their acknowledgment or denial of his grievances or appeals, they must be dismissed.

In general, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual."  Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009).

Plaintiff alleges he was wrongfully placed in keeplock for fifteen days, but he does not allege "he endured unusual conditions beyond normal prison discipline."  Acevedo v. Fischer, 2014 WL 5015470, at *10 (S.D.N.Y. Sept. 29, 2014) (allegations of twenty-six days in keeplock absent additional allegations of hardship do not state a due process claim).

Accordingly, plaintiff's due process claims arising from his keeplock confinement must be dismissed.

IV.   Access-to-Courts Claims

Liberally construed, plaintiff purports to allege access-to-courts claims arising from three incidents.  First, plaintiff alleges Deputy Superintendent Williams and Deputy Superintendent Akinyombo submitted falsified health records to oppose plaintiff's petition for a writ of habeas corpus in the Supreme Court, Dutchess County, which were filed by AAG Cieprisz.  Second, plaintiff alleges Officer Dinkins denied him access to the Fishkill law library, which caused him to miss a court deadline.  Third, plaintiff alleges C.O. Williams denied his sick call, which forced plaintiff to attend court appearances without his medication or cane.

A.   Legal Standard

"The Supreme Court has grounded the right of access to the courts in the Privileges and Immunities Clause of Article IV, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment."  Raffaele v. City of New York, 144 F. Supp. 3d 365, 374 (E.D.N.Y.

2015).  There are two types of claims arising from denial of this right:  "forward-looking" claims and "backward-looking" claims.  <u>Sousa v. Marquez</u>, 702 F.3d 124, 127–28 (2d Cir. 2012).

"Forward-looking" claims include claims "that systemic official action frustrated [a plaintiff's] ability to file a suit."  <u>Sousa v. Marquez</u>, 702 F.3d at 127.  In contrast, "backward-looking" claims are claims that a lawsuit "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future."  <u>Id</u>. at 127–28.

To state a backward-looking claim, a plaintiff must plausibly allege a defendant, acting deliberately and with malice, "took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim," <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d Cir. 2003), and that those actions caused the plaintiff to suffer "actual injury."  <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996).

To establish "actual injury," a plaintiff must allege defendants hindered her efforts to pursue a nonfrivolous legal claim.  <u>See Amaker v. Haponik</u>, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999).  For example, a plaintiff might allege "the loss or inadequate settlement of a meritorious case, or the loss of an opportunity to seek some particular order of relief." <u>Christopher v. Harbury</u>, 536 U.S. 403, 413–14 (2002).  "A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts."  <u>Amaker v. Haponik</u>, 1999 WL 76798, at *3.

B.    <u>Analysis</u>

Plaintiff has not plausibly alleged an access-to-courts claim with respect to his habeas petition or C.O. Williams's denial of his sick call, but he has plausibly alleged an access-to-courts claim with respect to his denial of his library access.

1.      Habeas Petition

With respect to his habeas petition, plaintiff attempts to assert a backward-looking claim, namely, that the actions of Deputy Superintendent Williams, Deputy Superintendent Akinyombo, and AAG Cieprisz hindered plaintiff's efforts to pursue a writ of habeas corpus by falsifying his medical records and submitting them in opposition to his petition.

Here, plaintiff fails to state an access-to-courts claim because he does not allege any actual injury resulting from the purported falsification of documents.  Plaintiff does not suggest the allegedly false statements in his medical records affected the court's decision on his petition. Instead, he generally contends the falsification violated his constitutional rights.  (See SAC ¶¶ 48, 53).  These general statements, absent any factual support, are insufficient to sustain an access-to-courts claim.  Kaminski v. Semple, 796 F. App'x 36, 39 (2d Cir. 2019) (summary order) (affirming dismissal of access-to-courts claim when inmate did not allege "the denial of access to a law library resulted in any actual injury relating to his habeas corpus petition").

2.      Library Access

With respect to his law-library access, plaintiff also attempts to assert a backward-looking claim, that is, that Officer Dinkins hindered plaintiff's direct appeal of his conviction in the New York State Court of Appeals.  Namely, plaintiff alleges that, between January 2 and January 14, 2020, Officer Dinkins removed plaintiff from the law library, made plaintiff wait for library supplies, and once closed the law library early, which caused plaintiff to miss a January 9, 2020, court deadline in a direct appeal of his criminal conviction.

Here, plaintiff plausibly alleges Officer Dinkins took actions that caused actual injury to his direct appeal of his criminal conviction.  A prison inmate states an access-to-courts claim when he alleges, for example, inadequacies in a prison law library or legal assistance program

impeded his ability to challenge his underlying conviction.  See Lewis v. Casey, 518 U.S. at 351, 354–55.  Plaintiff plausibly alleges Officer Dinkins's conduct caused him to miss a court deadline, which, at this stage of the case, is sufficient to allege an actual injury to his right to access the courts.

3.      Denial of Sick Call

With respect to his sick call, plaintiff also attempts to assert a backward-looking claim, that is, he claims C.O. Williams's conduct resulted in plaintiff attending court appearances without medication or a cane.  Here, plaintiff does not allege any injury whatsoever to his court case arising from his attendance without medication or his cane, and thus he does not adequately allege an access-to-courts claim.

Accordingly, plaintiff's access-to-courts claim may proceed against Officer Dinkins only, and all other access-to-courts claims must be dismissed.

V.      Mail-Interference Claim

Defendants argue plaintiff does not adequately allege a mail-interference claim.

The Court agrees.

"[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment."  Davis v. Goord, 320 F.3d at 351.  Thus, a prison official's interference with an inmate's mail implicates an inmate's First Amendment rights.  See id.  However, "an isolated instance of mail tampering" does not typically amount to a constitutional violation.  Id.

Plaintiff alleges C.O. Cimminelli opened, read, and destroyed plaintiff's incoming mail on one occasion.  (SAC ¶ 80).  This is insufficient to state a mail-interference claim.  See Davis v. Goord, 320 F.3d at 351.

Accordingly, plaintiff's mail-interference claim must be dismissed.

VI.   <u>Verbal Harassment Claim</u>

Defendants contend plaintiff's allegations of verbal harassment by Officer Dinkins and C.O. Kinney fail to state a claim upon which relief can be granted.

The Court agrees.

"Verbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and is therefore not actionable" under Section 1983.  <u>Myers v. City of New York</u>, 2012 WL 3776707, at *9 (S.D.N.Y. Aug. 29, 2012), <u>aff'd</u>, 529 F. App'x 105 (2d Cir. 2013) (summary order).

Plaintiff alleges two incidents of verbal harassment.  According to plaintiff, in January 2020, Officer Dinkins called plaintiff a "rapist" and "child molester" (SAC ¶ 70), and in October 2020, C.O. Kinney called plaintiff a racial slur.  (<u>Id</u>. ¶ 47).  Absent any physical injury, these allegations do not state a Section 1983 claim.

Accordingly, any claim based solely on verbal harassment must be dismissed.

VII.   <u>Retaliation Claims</u>

Defendants contend plaintiff's retaliation claims are conclusory and thus must be dismissed.

The Court agrees.

To state a First Amendment retaliation claim, "a plaintiff must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." <u>Dolan v. Connolly</u>, 794 F.3d 290, 294 (2d Cir. 2015).

A prisoner engages in constitutionally protected activity when he challenges prison conditions by filing a complaint, grievance, or civil-rights lawsuit.  See Dolan v. Connolly, 794 F.3d at 294.  However, courts approach prisoners' retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  Id. at 295.  Accordingly, to survive a motion to dismiss, a prisoner asserting a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts.  Id.

Here, plaintiff characterizes nearly all of defendants' conduct as retaliation for plaintiff's informal complaints, formal grievances, or this lawsuit.  However, plaintiff's allegations are uniformly conclusory—he alleges no facts suggesting defendants' conduct was causally connected to his constitutionally protected activity.

Accordingly, plaintiff's retaliation claims must be dismissed.

VIII.   Remaining Defendants

Although defendants Stephen Maher, Mitchell G. Lake, Jeff McKoy, and Sgt. Valez are listed in the case caption, plaintiff makes no factual allegations about their conduct.

"Where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."  Perkins v. City of New York, 2017 WL 1025987, at *2 (S.D.N.Y. Mar. 15, 2017).

Accordingly, defendants Stephen Maher, Mitchell G. Lake, Jeff McKoy, and Sgt. Valez must be dismissed from this case.

IX.   <u>Motion for Preliminary Injunction</u>

Defendants argue plaintiff's motion for preliminary injunction must be denied.

The Court agrees.

In his preliminary-injunction motion, plaintiff seeks (i) release from Fishkill because he risks both going blind without adequate medical care and exposure to COVID-19 because of Fishkill's inadequate precautions; (ii) an order directing defendants to expedite his medical treatment; and (iii) protection from C.O. Cimminelli and C.O. Kinney.

First, "a prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement." <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 78 (2005). Thus, to the extent plaintiff seeks his release from Fishkill, his motion must be denied.

Second, plaintiff has not shown a substantial likelihood of success on the merits of his surviving medical-needs claim. According to plaintiff, defendants' failure to treat his glaucoma is causing irreversible damage to his eyes. However, defendants offer evidence plaintiff has seen multiple medical providers—both in prison and at Westchester Medical Center—for his glaucoma, received medication, and has actually declined certain treatment. (Doc. #132, at 5–6). Considering these factual disputes, a preliminary injunction is inappropriate. <u>See, e.g.</u>, <u>Johnson v. Newport Lorillard</u>, 2003 WL 169797, at *3–5 (S.D.N.Y. Jan. 23, 2003) (inmates failed to demonstrate substantial likelihood of success on the merits of their medical-needs claim in light of "substantial evidence refuting plaintiffs' claim" of inadequate treatment).

Third, in light of the dismissal of plaintiff's failure-to-protect claims against C.O. Cimminelli and C.O. Kinney, the motion for preliminary injunction with respect to those claims must also be denied. <u>See, e.g.</u>, <u>Ogbolu v. Trs. of Columbia Univ.</u>, 2022 WL 280934, at *8 n.5 (S.D.N.Y. Jan. 31, 2022) ("Because Plaintiff's underlying claims have been dismissed, it follows

that there is neither a likelihood of success on the merits of his claims nor substantial questions going to the merits of those claims.").

Accordingly, plaintiff's motion for preliminary injunction must be denied.

## CONCLUSION

Defendants' motion to dismiss the second amended complaint is GRANTED IN PART and DENIED IN PART.

Specifically, the following claims may proceed:

- Deliberate indifference to serious medical needs claims against P.A. Ngbodi, Pharmacy Supervisor Pralatowski, Nurse Administrator Vasquez, and Deputy Superintendent Henton arising from plaintiff's glaucoma treatment;

- Conditions-of-confinement claims against Nurse Administrator Becker, Deputy Superintendent Akinyombo, Deputy Superintendent Frost, and Superintendent Burnett arising from the S200 policy;

- Excessive-force claims against Lt. Perkins, Sgt. Campbell, C.O. Flores, and Sgt. Dyson arising from plaintiff carrying draft bags;

- Excessive-force claim against C.O. Kinney arising from C.O. Kinney allegedly coughing at plaintiff; and

- Access-to-courts claim against Officer Dinkins arising from Officer Dinkins's alleged denial of plaintiff's library access.

Nurse Administrator Becker, Deputy Superintendent Akinyombo, Deputy Superintendent Frost, Superintendent Burnett, P.A. Ngbodi, Pharmacy Supervisor Pralatowski, Nurse Administrator Vasquez, Deputy Superintendent Henton, Officer Dinkins, Lt. Perkins, Sgt. Campbell, C.O. Flores, Sgt. Dyson, and C.O. Kinney shall answer the second amended complaint by March 31, 2022.

Plaintiff's motion for a preliminary injunction is DENIED.

By separate Order, the Court will schedule an initial conference.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate from the docket defendants Michael Capra; Anthony J. Annucci; Anne Marie McGrath; John Morley; Stephen Maher; Jeff McKoy; Ruth Brown; Bailey; Ortiz; Valez, Q. Quick; Sally A. Reams; Leroy Fields; Stephen Urbanski; John Doe, individually and as 5200 Spec. Housing Unit Sgt. for 1/9/2021; C.O. Robert D. Cimminelli; Shelley Mallozzi; James O'Gorman; A. Washer; Mitchell G. Lake; Margaret Cieprisz; K. Williams; Davis; S. Amoia; and B. Mazzone.

The Clerk is further instructed to terminate the motions.  (Docs. ##104, 123).

The Clerk is also instructed to terminate from the docket defendant Jane/John Doe, individually and as movement control in-house prison official for Fishkill C.F., on 12/23/2019.[10]

Chambers will mail a copy of this Opinion and Order to plaintiff at the address on the docket.

Dated: March 10, 2022
       White Plains, NY

                              SO ORDERED:

                              _____
                              Vincent L. Briccetti
                              United States District Judge

---

[10]    This John Doe defendant was identified as Lt. Perkins, who was added to the docket on July 14, 2020.  (See Doc. #38).